Jerome CANADY, Plaintiff/Appellant,

v.

**MEHARRY MEDICAL COLLEGE, et al., Defendants/Appellees.**

Court of Appeals of Tennessee, Middle Section at Nashville.

Jan. 30, 1991.

Application for Permission to Appeal Denied by Supreme Court June 10, 1991.

Fred W. Cowden, Jr. and Paul T. Housch, Nashville, for plaintiff/appellant.

Joy Sims and Richard Jackson, Nashville, for defendants/appellees.

## OPINION

TODD, Presiding Judge.

The plaintiff, Jerome Canady, has appealed from a non-jury judgment of the Trial Court dismissing his suit against the defendant Meharry Medical College and certain of its officials regarding plaintiff's participating in a residency program conducted by the defendant, Meharry Medical College (hereafter Meharry).

During the period involved in the controversy, Meharry maintained a five year surgical residency program leading to qualification as a specialist in general surgery. After graduation from Temple University Medical School and one year's medical resident training at the University of Illinois

Hospital, on July 1, 1985, plaintiff began surgical residency at Meharry. Residents at Meharry serve under one year contracts. Plaintiff's contract was renewed in July, 1986, and July, 1987, but was not renewed in July, 1988. Plaintiff has filed this suit for damages for failure to renew plaintiff's contract for what would have been his final year of residence.

The Trial Judge filed a comprehensive memorandum in which he found:

1. In his first year at Meharry, Plaintiff began to receive negative evaluations with recommendations against renewal of his contract, but his contract was renewed for the 1986–1987 year.

2. During the 1986–1987 year, the head of the surgery department received further complaints which were relayed to plaintiff with the advice that it was not likely that his contract would be renewed. However, his contract was renewed for the 1987–1988 year.

3. In the summer of 1987, defendant, Dr. Hoover, became head of the surgery department. He met with a "uniform outcry to fire" plaintiff, but did not discharge plaintiff. He did place plaintiff under strict supervision of defendant, Dr. Weaver.

4. In the fall of 1987, as a part of the Meharry program, plaintiff served in St. Anthony's Hospital where he received several very negative evaluations.

5. In the spring of 1988, as a part of the Meharry program, plaintiff served at Veterans Hospital. The chief of surgery at Veterans Hospital sent plaintiff a written complaint of his performance, to which plaintiff responded with a letter criticizing the Veterans Hospital staff with copies to his attorneys, the Veterans Hospital chief of staff and director and to Dr. Hoover, his supervisor at Meharry. Dr. Hoover instructed plaintiff to meet him the following day for reassignment (to another hospital). On April 12, 1988, after surveying the fourth and fifth year residents, the staff voted not to renew plaintiff's contract and to remove him from patient care for the remainder of the contract year ending June 30, 1988.

6. On or about April 28, 1988, Dr. Hoover informed plaintiff orally, and, on May 5, 1988, Dr. Hoover informed plaintiff by letter that his contract would not be renewed.

7. On May 2, 1988, plaintiff requested reinstatement or a hearing. On May 19, 1988, a hearing was conducted by an ad hoc committee composed of non-surgical staff members. The committee concurred in the decision of the surgical staff.

8. On June 7, 1988, the executive committee of the medical staff concurred in the decision of the ad hoc committee.

9. On June 17, 1988, plaintiff requested a further hearing; but, before a further hearing could be held, this suit was filed.

10. Meharry failed to follow procedures required by Article VIII of the contract by failing to provide clear notice of the agenda of the May 19, 1988, meeting, the ad hoc committee was composed of 4 instead of 3, and its proceedings were not recorded.

11. Plaintiff's May 2, 1988, request for a hearing was vague: and, after his June 17, 1988, request for a further hearing, plaintiff abandoned the grievance procedure by filing this suit.

The Trial Judge concluded that:

1. The clinical performance of plaintiff justified the decision not to renew his contract.

2. The non-renewal of the contract was not due to imperfect grievance process, but due to plaintiff's substandard clinical performance.

3. All damages asserted by plaintiff are speculative.

4. Plaintiff abandoned his claim to "due process."

The judgment dismissed the suit as to all defendants.

Plaintiff has presented three issues for review, of which the first is as follows:

**(1) WAS THE TRIAL COURT IN ERROR IN ITS DETERMINATION THAT THE PLAINTIFF WAS NOT DAMAGED BY THE DEFENDANT'S FAILURE TO COMPLY WITH ITS CONSTITUTION AND BYLAWS WHICH THE COURT FOUND WERE PART OF THE PLAINTIFF'S RESIDENCY CONTRACT?**

■ This Court agrees with the Trial Court that the overwhelming evidence shows the plaintiff to have been guilty of such a continuous pattern of unsatisfactory conduct during his three year tenure that all reasonable men would agree that any fair-minded group of his peers or superiors would have declined to retain him in residence at Meharry. Without belaboring the unpleasant details, it is sufficient to state that this finding of the Trial Court is supported by the preponderance of the evidence, and should not be reversed.

Plaintiff asserts that he received one vote in the ad hoc committee, and that, if he had been permitted to name a member of a committee of three (as required by the bylaws), then two of the three would have voted in his favor. This is interesting reasoning, but not persuasive. In the first place, the minutes of the committee do not show that plaintiff received one vote. The minutes state:

The above accurately reflects the decision reached by *at least a majority* of the hearing committee.

(Emphasis added.)

A majority of a committee of four would be three, but the words emphasized above import that three *or more* of the committee approved the decision. Moreover, if only three voted for the decision, there is no indication that one voted against. It is equally plausible to infer that one member chose not to vote, but might well have approved the decision if necessary to produce a majority of two on a three person committee.

There is no showing that any member of the ad hoc committee or the executive committee was unfairly biased against plaintiff. Also, there is no showing that a member of the staff would vote in favor of plaintiff just because he was selected by plaintiff.

■ The termination of a residency does not infringe upon any constitutional right of due process. *Stretten v. Wadsworth Veteran's Hospital*, 9th Cir.1976, 537 F.2d 361.

■ A hospital is not precluded from suspending a resident with pay, but is only obliged to afford him rudimentary procedural and substantive fairness. *Ezekial v. Winkley*, 1977, 20 Cal.3d 267, 142 Cal.Rptr. 418, 572 P.2d 32.

■ A student, even one in a public institution, is not entitled to procedural due process more than some type of informal hearing. *Harold W. Horne v. Cox, et al*, Tenn.1977, 551 S.W.2d 690.

The Courts are ill equipped to evaluate academic performance. *Board of Curators v. Horowitz*, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978).

■ This is an action for breach of contract. The Trial Judge found that Meharry breached its contract with plaintiff by failure to strictly comply with the contract in its conduct of hearings regarding complaints as to plaintiff's performance, or regarding plaintiff's grievance.

Assuming breach of the contract, the next question for resolution must be, what were the results of the breach? Plaintiff's contract with Meharry entitled him to employment for one year beginning July 1, 1987, and ending June 30, 1988. There is no evidence that plaintiff was discharged at any time during the period of his contract or deprived of any compensation due him under the terms of his contract.

■ It is true that plaintiff's duties were restricted because of his differences with his superiors, but this is not shown to be a violation of any provision of his contract.

Absent an express provision assuring plaintiff of continuous, uninterrupted assignment to particular duties, there is no implied assurance of assignment to particular duties.

It appears that the only immediate loss sustained by plaintiff as a result of the disciplinary action of Meharry was his emotional reaction from being disciplined by limitation of duties. Since this action was not prohibited by the contract, it is not actionable as a breach of the contract.

■ Plaintiff conceives, however, that he has a right of action for the failure of Meharry to contract with him for an additional year of residency from July 1, 1988, to June 30, 1989, which would have enabled him to pursue further training in a medical speciality which would have produced for him a fabulous income, and that he should be compensated in damages for the inability to realize his hopes for the fabulous income. Plaintiff has no such right of action.

Plaintiff had no contractual right except for the agreed employment for one year. He had no contract right to renewal or extension of his contract beyond June 30, 1988. Both Meharry and plaintiff were free to contract or not to contract for the 1988–1989 year. The assent of both parties was necessary to create such a renewal contract. Either party was free to decline to renew for good cause, bad cause or no cause at all. For whatever cause, Meharry determined that it would not enter into a further contract with plaintiff, and it was free to do so without liability to him.

Thus, plaintiff sustained no compensable injury from the breach of his 1987–1988 contract, and there can be no breach of a nonexistent contract for the 1988–1989 year.

Plaintiff cites *Bock v. John C. Lincoln Hospital,* App.1985, 145 Ariz. 432, 702 P.2d 253; however, this was an action for revocation of the staff privileges of a physician in private practice who was actually damaged in his private practice by exclusion from the hospital. In the present case, the plaintiff was employed for a fixed term and has shown no damage or loss of benefits during that year.

Plaintiff also cites *Kendall v. Board of Education of Memphis,* 6th Cir.1980, 627 F.2d 1; however, this was a civil rights action against a governmental agency; whereas the present cause is a contract action against a private charitable corporation. Moreover, *Kendall* involved a nontenured teacher who was discharged during her one year contract period. The appeals court held that she was entitled to due process rights as to termination of her one year contract, but *not* as to her expectation of renewal of the contract.

The Trial Court correctly found that plaintiff did not establish that any or all of the infirmities in the grievance process was/were a proximate cause of any of the losses claimed by him.

The foregoing is dispositive of the merits of this appeal. However, plaintiff's two other issues will be briefly discussed.

Plaintiff's second issue is:

(2) WAS THE TRIAL COURT IN ERROR IN ITS DETERMINATION THAT THE FINANCIAL LOSSES PROVEN BY THE PLAINTIFF WERE SPECULATIVE AND THEREFORE COULD NOT FORM THE BASIS FOR AN AWARD OF DAMAGES?

■ The damages claimed by plaintiff are based upon the theory that, *if* Meharry had meticulously followed its grievance procedure, he would have been successful in his defense against charges and in prosecution of his complaint; and that *as a result of such success,* he would have been reappointed for an additional year; that, at the conclusion of that year, his services would have received approval and certification; that plaintiff would thereby have attained admission to a further specialized residency which he would have successfully completed; and that he thereafter would have engaged in a successful and profitable specialized surgical practice.

This Court agrees with the Trial Judge that the proximate relationship between the irregularities of procedure and the failure of plaintiff to realize his dream is too speculative and subject to too many future variables to show a proximate causal relationship between the irregularities and the claimed injury. The very first obstacle or breach in the relationship (already discussed) is the absolute freedom of Meharry to renew or not renew plaintiff's contract for the year 1988–1989, which was a necessary link in the chain leading to plaintiff's anticipated profitable career.

Plaintiff cites *Dickens v. United States,* 5th Circuit, 1977, 545 F.2d 886. This was a wrongful death case in which evidence of probable future earnings was admitted for its circumstantial support of the value of the life of the deceased. In the present case, plaintiff did not lose his life, he merely had a contest with his contemporaries with whom he could not agree. There is no showing that plaintiff has been "ruined for life" or that he is unable to pursue his dream through more friendly associations.

Likewise, *Riddle v. Anderson,* 1984, 85 Pa.Cmwlth. 271, 481 A.2d 382, cited by plaintiff, involved brain injuries which would have interfered with the anticipated career of the plaintiff in that case.

Plaintiff asserts the right to damages "within the contemplation of the parties to the contract." It cannot be said that parties to a one year contract expected to pay damages for refusal to renew such contract for an additional year when there was no contractual obligation to do so.

The next obstacle is the overwhelming evidence of plaintiff's unsatisfactory relations with his superiors and peers at Meharry and the virtual certainty that plaintiff would not have been retained for the final year under the circumstances.

The remaining obstacles include the uncertainty of plaintiff's successful residency elsewhere and of establishing a successful private practice in view of his unfortunate capacity to alienate those with whom he worked at Meharry.

The foregoing are factual matters which the Trial Judge determined adversely to the plaintiff. The evidence does not preponderate otherwise, and the decision of the Trial Court must prevail. T.R.A.P. Rule 13(d).

Plaintiff's final issue is:

(3) DID THE PLAINTIFF ABANDON OR WAIVE THE PROCEDURAL RIGHTS GUARANTEED TO HIM UNDER HIS CONTRACT?

■ The brief of plaintiff concedes that the established rule in Tennessee is that administrative remedies must be exhausted before relief may be sought from the courts. See *Bracey v. Woods,* Tenn.1978, 571 S.W.2d 828.

It is true that the law will not require pursuit of an administrative relief if such pursuit would be useless. *State v. Yoakum,* 201 Tenn. 180, 297 S.W.2d 635 (1956). There is no showing that the pursuit of administrative relief would be useless except the obvious fact that the merits of the controversy lay with the plaintiff's accusers rather than with plaintiff and that the free will of the officials of Meharry would not have been exercised to rehire plaintiff for another year.

Plaintiff cites authority for the exercise of judicial discretion in requiring exhaustion of administrative remedies. This Court is satisfied to approve the exercise of discretion by the Trial Judge in this regard.

Plaintiff complains that the timing of events was such that he could not have secured by administrative means the extension of his contract which he initially sought to force upon Meharry by judicial fiat which was refused.

A more temperate approach, including patient pursuit of the administrative process, would have produced a clear decision of the administrative authorities which might have been applied retroactively if favorable to plaintiff. The "time factor" is not an acceptable excuse for failure to follow the full administrative route in the present case.

Each of the issues presented by plaintiff has been considered and resolved in support of the judgment of the Trial Court which is affirmed. Costs of this appeal are taxed against the plaintiff. The cause is remanded to the Trial Court for any necessary further proceedings.

Affirmed and Remanded.

LEWIS and CANTRELL, JJ., concur.