# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### October 23, 2014 Session

## MARY KINDRED v. NATIONAL COLLEGE OF BUSINESS AND TECHNOLOGY, INC. ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT00402511     Robert L. Childers, Judge**

_____

**No. W2014-00413-COA-R3-CV- Filed March 19, 2015**

_____

A former student at National College of Business and Technology, Inc. ("National College") sued the school and its director for breach of contract, intentional infliction of emotional distress, and violation of the Tennessee Consumer Protection Act following the cancellation of her enrollment due to the fact her student file did not contain an official copy of her high school transcript or the equivalency certificate as required by the Tennessee Higher Education Commission. Plaintiff's claims for intentional infliction of emotional distress and violation of the Tennessee Consumer Protection Act were dismissed pursuant to Tenn. R. Civ. P. 12.02(6) for failure to state a claim upon which relief could be granted. Thereafter, Defendants moved to summarily dismiss Plaintiff's remaining claim for breach of contract. The trial court found that Defendants negated two essential elements of Plaintiff's breach of contract claim, namely, breach and damages, and summarily dismissed that claim. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Al H. Thomas and Aaron Thomas, Memphis, Tennessee, for the appellant, Mary Kindred.

W. Brantley Phillips, Jr., Nashville Tennessee, and Jonathan E. Nelson, Memphis, Tennessee, for the appellees, National College of Business and Technology and Noel Denny.

**OPINION**

Mary Kindred ("Plaintiff") enrolled at the Memphis campus of National College of Business and Technology ("National College")[1] in March 2009 and eventually elected to pursue a degree as a medical assistant.[2] When Plaintiff enrolled, the Tennessee Higher Education Commission (the "THEC") allowed students to attest on their enrollment application that they had either received a high school transcript or some form of high school equivalency certificate, e.g., a General Educational Development ("GED"). However, that policy changed in September 2009, at which time National College informed all students, including Plaintiff, that THEC Rule 1540-01-02-.15(6)(b) required National College to "have *on file an official copy* of the high school transcript, or the equivalency certificate with scores which meet the state's minimum for passing . . ." for each enrolled student. (Emphasis added).[3]

On August 12, 2010, approximately two weeks before the start of Term 107, Plaintiff went to National College to obtain a copy of the Term 107 schedule. National College advised Plaintiff that her student file did not contain an official copy of her GED and, thus, was not in compliance with the THEC. Plaintiff alleges that she was "shocked" to learn her student file was not in compliance, and further alleges that it was National College's responsibility to get her GED transcript from the Memphis Board of Education.[4] At that time, instead of providing an official copy of her GED certificate, Plaintiff presented her GED diploma card, for the intended purpose of demonstrating that she received a passing score on the GED. National College made a copy of Plaintiff's GED card and provided her with a copy of the Term 107 schedule; however, it is undisputed that prior to the start of Term 107, Plaintiff's student file did not contain an official copy of her GED certificate; nevertheless, Plaintiff alleges that she reasonably believed that to be the end of the matter.

---

[1]National College is a private post-secondary education institution that is regulated by the Tennessee Higher Education Commission (the "THEC").

[2]Plaintiff attended classes without interruption until August 2010 when the alleged events underlying this action occurred.

[3]Although THEC Rule 1540-01-02-.15(6)(b) was promulgated in 1985, according to the Declaration of Cyndee P. Moore, the Vice President of Operations for National College's Tennessee campuses, it wasn't until July 2009 that the THEC required strict compliance with the rule.

[4]It is undisputed that National College, on two different occasions, attempted to contact the Memphis Board of Education to request an official copy of Plaintiff's GED certificate in an attempt to bring her student file into compliance; however, for unknown reasons, the Board never complied with the requests.

Term 107 began on August 30, 2010, and Plaintiff attended classes for approximately one week before Noel Denney, the director of National College's Memphis campus, was informed of her attendance. Because Plaintiff's student file did not have an official copy of her GED certificate and, thus, was not in compliance with the THEC, Mr. Denney cancelled Plaintiff's enrollment in Term 107. Mr. Denney advised Plaintiff of the reason for the cancellation and that she would not be charged tuition for that term. Mr. Denney further informed Plaintiff that she could return to classes in the following term so long as her student file was in compliance at that time.

According to Plaintiff, Mr. Denney communicated to her that when she went to obtain her Term 107 class schedule, National College gave her a deadline of August 13, 2010, to bring her student file into compliance by providing an official copy of her GED certificate; because Plaintiff failed to comply with the deadline, Mr. Denney cancelled her enrollment. Plaintiff contends that she was not given a deadline nor told by National College that it was her responsibility to provide the GED certificate. She further alleges that Mr. Denney told her he was choosing to accept the word of his employees rather than her version.

On the same day Plaintiff was informed of the cancellation of her enrollment, she procured an official copy of her GED certificate from the Memphis Board of Education and delivered it to Mr. Denny. Plaintiff contends she reasonably believed she had cured her compliance issue and returned to Term 107 classes. However, Plaintiff was informed that Mr. Denny had affirmed his decision to cancel her enrollment because her student file was not in compliance *prior to* the start of the term.

Plaintiff alleges that the actions by Mr. Denny and National College ("Defendants") in the termination of her enrollment were arbitrary, and unjustified, and that she felt as though she could no longer pursue her educational goals because she could not continue at National College and could not start over somewhere else at her age. Nevertheless, Plaintiff contends that through the encouragement of others, she was "inspired to try and suppress her feelings of pain and distress and return to National College."

In November 2010, approximately two months after the cancellation of her enrollment, Plaintiff enrolled in Term 111. Upon enrollment, Plaintiff was informed that she had an outstanding balance in the amount of $521 for textbooks she purchased during Term 107, and that she could not enroll until the balance was paid. Plaintiff attempted to return her textbooks for a refund; however, the return and refund was not allowed.[5] Plaintiff alleges that she perceived this incident as abusive, degrading, and a continuation of Defendants' previous treatment towards her, that being the "degrading termination of

---

[5]According to Plaintiff, Mr. Denney sent her a letter after her disenrollment that stated she could return her Term 107 books for a refund; this letter, however, is not in the record.

her enrollment [in Term 107]." Nevertheless, according to Plaintiff, she continued to persevere in suppressing these feelings and paid the balance.

Plaintiff attended two additional terms at National College, Term 111 (November 2010 - February 2011) and Term 113 (March 2011 - May 2011). During this time, Plaintiff alleges that National College "caused additional incidents to happen to [Plaintiff]" which she alleges to be abusive, degrading, and a continuation of Defendants' previous treatment towards her; however, Plaintiff only identifies one incident. According to Plaintiff, the incident occurred at the conclusion of Term 113 in May 2011 when she challenged a failing grade "that National College gave her" in one of her courses. Plaintiff perceives "the failing grade and National College's review of the grade to be a continuation of [Defendants'] abusive and degrading treatment." Plaintiff alleges that after this incident, she could no longer suppress her pain and distress that began with National College's "degrading termination of her enrollment eight months earlier." Plaintiff further alleges that this forced her to cease her attendance at National College and abandon her educational/professional goals. In June 2011, Plaintiff informed National College that she would not be enrolling in the following term.

Plaintiff, acting pro se, initiated this action in September 2011. With the benefit of counsel, Plaintiff filed a Second Amended Complaint (the "Complaint"), the operative pleading in this appeal, on June 21, 2013. Plaintiff alleges a cause of action under breach of contract against National College; intentional infliction of emotional distress ("IIED") against both Mr. Denney and National College; and a violation of the Tennessee Consumer Protection Act ("TCPA") against both Mr. Denney and National College.

Defendants moved to dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to Tennessee Rule of Civil Procedure 12.02(6). Following a hearing, the trial court found that the Complaint did not allege viable claims for violations of the TCPA or IIED and dismissed those claims, but denied the motion to dismiss the claim for breach of contract. Specifically, the court found that because National College is an educational institution whose activities are not subject to the TCPA, and that, per the allegations in the Complaint, National College had not engaged in a deceptive or unfair trade practice, Plaintiff failed to state a claim for violation of the TCPA. With respect to Plaintiff's claim for IIED, the trial court found that because Defendants had not engaged in conduct so egregious and outrageous as cannot be tolerated by a reasonable person, normally constituted, in a civilized society, per the allegations in the Complaint, Plaintiff failed to state a claim for IIED. Specifically, the trial court stated that "[f]or example, the Complaint alleges that, despite Defendants' purported conduct towards her, Plaintiff re-enrolled at National College and attended classes for several months following the incident at issue." Based upon the foregoing, the trial court dismissed Plaintiff's claim for recovery under the TCPA and IIED.

Following the trial court's order of dismissal, Plaintiff filed two motions: a motion to revise the order dismissing her claims under TCPA and IIED, and a motion to amend

the Complaint to add recovery for emotional distress damages under breach of contract. Both motions were denied.

Plaintiff's claim for breach of contract alleges that an enforceable agreement, either written, oral, or a combination of both, was formed whereby in exchange for her enrollment and tuition, National College agreed to provide Plaintiff access to her chosen course of studies at National College. Plaintiff alleges that Defendants' action in terminating her enrollment constitutes a breach of National College's contractual obligation to provide her access to her chosen course of study. Plaintiff further alleges she attempted to mitigate the damages but that she was either "unable to" or National College made it "too hard for her." Plaintiff claims that, due to National College's alleged breach, she lost the "expected value of her chosen course of studies" that would have qualified her as a medical assistant.

Defendants moved to summarily dismiss Plaintiff's remaining claim for breach of contract for two primary reasons. First, with respect to Plaintiff's breach of contract claim against Mr. Denney, Defendants assert that, per the allegations of the Complaint, Plaintiff only alleged a cause of action against National College and not Mr. Denney in his individual capacity; thus, Plaintiff had no legal basis to maintain the breach of contract action against Mr. Denny. Second, Defendants assert that, assuming, arguendo, there is an enforceable contract between National College and Plaintiff, and that the temporary suspension of Plaintiff's enrollment rises to the level of a breach of the contract, Plaintiff cannot establish the essential element of damages. Specifically, Defendants assert Plaintiff's claimed damages are impermissibly speculative and that Plaintiff is unable to show her alleged damages were caused by the alleged breach of contract, that being the cancellation of her enrollment in Term 107. Plaintiff filed a response in opposition.

Following a hearing on Defendants' motion for summary judgment, the trial court summarily dismissed Plaintiff's breach of contract claim against Mr. Denney based upon the finding that no contractual relationship existed between Plaintiff and Mr. Denney individually.[6] The trial court also summarily dismissed Plaintiff's breach of contract claim against National College based upon the finding that National College successfully negated two essential elements of Plaintiff's claim.

This appeal followed. Plaintiff presents six issues for our review; however, we consolidate and restate the issues as follows:

1. Whether the trial court erred in summarily dismissing Plaintiff's breach of contract claim.

---

[6]At the summary judgment hearing, Plaintiff conceded that the Complaint did not allege any damages against Mr. Denney, and, therefore, Plaintiff did not object to his dismissal. This ruling is not challenged by either party on appeal.

2. Whether the trial court erred in dismissing Plaintiff's claim of intentional infliction of emotional distress.
3. Whether the trial court erred in dismissing Plaintiff's claim under the Tennessee Consumer Protection Act.
4. Whether the trial court abused its discretion in denying Plaintiff's motion to file a third amended complaint to include a claim for emotional distress damages as a component of her breach of contract claim.

We will begin our analysis with the summary dismissal of Plaintiff's breach of contract claim.

## ANALYSIS

### I. SUMMARY JUDGMENT

Plaintiff's breach of contract claim was disposed of by means of summary judgment. Because the resolution of a motion for summary judgment is a matter of law, we review the trial court's judgment de novo with no presumption of correctness. *Martin v. Norfolk Southern Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008). This Court must make a fresh determination that all the requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. *Abshure v. Methodist-Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 103 (Tenn. 2010). As does the trial court, the appellate court considers the evidence in the light most favorable to the nonmoving party and resolves all inferences in that party's favor. *Martin*, 271 S.W.3d at 84; *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). To be entitled to summary judgment, the moving party must affirmatively negate an essential element of the nonmoving party's claim *or* demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. Tenn. Code. Ann. § 20-16-101 (effective on claims filed after July 1, 2011). Thus, as the moving party, National College had the burden to negate an essential element of Plaintiff's breach of contract claim *or* demonstrate to the court that Plaintiff cannot prove an essential element of her claim. *See* Tenn. Code. Ann. § 20-16-10.

### II. BREACH OF CONTRACT

Plaintiff claims she has an enforceable contract with National College that provides her access to her chosen course of studies in consideration for her enrollment and tuition and that National College breached the contract when it cancelled her enrollment in Term 107.

A claim for breach of contract requires "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages

caused by the breach of the contract." *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005).

National College filed a properly supported motion for summary judgment to establish that Plaintiff's claimed damages are impermissibly speculative, and even if Plaintiff's claimed damages had been less speculative, assuming a contractual relationship existed between Plaintiff and National College, and assuming National College breached that contract, National College's alleged acts or omission were not the proximate cause of any damages Plaintiff may have incurred.

When a motion for summary judgment is properly supported, "[a]ny party opposing the motion for summary judgment must . . . serve and file a response to each fact set forth by the movant either (i) agreeing that the fact is undisputed, (ii) agreeing that the fact is undisputed for purposes of ruling on the motion for summary judgment only, or (iii) *demonstrating that the fact is disputed,*" and "*[e]ach disputed fact must be supported by specific citation to the record.*" *Id.* (emphasis added). The "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but his or her response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06.

Plaintiff filed a response opposing summary judgment, however, she failed to dispute the facts relied upon by Defendants as Tenn. R. Civ. P. 56.03 requires. Moreover, she failed to identify evidence establishing material factual disputes that were overlooked or ignored by the moving party, to produce additional evidence establishing the existence of a genuine issue for trial, or explain the necessity for further discovery as permitted by Tenn. R. Civ. P. Rule 56.06. *See Martin*, 271 S.W.3d at 84; *see also McCarley*, 960 S.W.2d at 588. Instead, Plaintiff merely relied upon the allegations in the Complaint. Accordingly, all of the facts supporting Defendants' motion for summary judgment remain undisputed. *See* Tenn. R. Civ. P. 56.06.

Because the material facts were undisputed, the issue for the trial court was to consider whether Defendants were entitled to summary judgment, as a matter of law, as to Plaintiff's claim for breach of contract. *See Martin v. Norfolk Southern Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1977). Based upon the undisputed facts, the trial court found that National College negated two of the three essential elements of Plaintiff's breach of contract claim; specifically, the essential elements of breach and damages.

## A. DAMAGES

### i. Uncertain, Contingent, or Speculative Damages

The trial court found that Plaintiff's claimed damages, the "expected value of her chosen course of studies," was impermissibly speculative and uncertain because it was undisputed that, as a part of Plaintiff's alleged contract with National College, she acknowledged that she was not guaranteed a job as a medical assistant and Plaintiff conceded that, even if she had obtained a degree in her chosen course of study at National College, she had been given no assurance or promise by National College of finding work in that field.

In making its ruling that Plaintiff's claimed damages were impermissibly speculative, as a matter of law, the trial court found the facts of Plaintiff's case were consistent with those in *Canady v. Meharry Medical College*, 811 S.W.2d 902 (Tenn. Ct. App. 1991).

In *Canady*, the plaintiff, a surgical resident at Meharry Medical College, had a residency/employment contract with Meharry that provided for certain procedures to be followed to address complaints as to the plaintiff's performance and the termination of his residency. *Id.* at 903-05. After receiving written complaints as to the plaintiff's performance, Meharry did not renew the plaintiff's contract, and his residency was terminated. *Id*. 904-05. The plaintiff filed suit against Meharry under a breach of contract theory alleging that he was not afforded the hearing procedures under the contract and sought damages equal to the value of "a successful and profitable specialized surgical practice." *Id*. at 906.

The trial court determined that, although Meharry breached its contract with the plaintiff by failure to strictly comply with the contract in its conduct of hearings regarding complaints as to the plaintiff's performance, or regarding the plaintiff's grievance, the plaintiff's damages were impermissibly speculative and uncertain. *Id*. at 905. This court agreed stating:

> Plaintiff conceives . . . that he has a right of action for the failure of Meharry to contract with him for an additional year of residency . . . which would have *enabled him to pursue further training in a medical specialty which would have produced for him a fabulous income,* and that *he should be compensated in damages for the inability to realize his hopes for the fabulous income. Plaintiff has no such right of action.*
>
> \*\*\*
>
> The damages claimed by plaintiff are based upon the theory that, if Meharry had meticulously followed its grievance procedure, he would have been successful in his defense against charges and in prosecution of his complaint; and that as a result of such success, he would have been reappointed for an additional year; that, at the conclusion of that year, his services would have received approval and certification; that plaintiff

would thereby have attained admission to a further specialized residency which he would have successfully completed; and that he thereafter would have engaged in a successful and profitable specialized surgical practice.

This Court agrees . . . that *the proximate relationship between the irregularities of procedure and the failure of plaintiff to realize his dream is too speculative and subject to too many future variables to show a proximate causal relationship between the irregularities and the claimed injury.*

*Id.* at 906-07 (emphasis added).

Turning the present case, National College contends that the facts in the present case are analogous to those of *Canady*, and, thus, necessitates the same outcome. Further, National College asserts that Plaintiff has repeatedly failed to place a specific and ascertainable value on her alleged contract damages. Plaintiff, however, contends the facts of her case are distinguishable from those of *Canady*, and that the same type of uncertainty does not exist in her situation. Plaintiff further contends her damages are not speculative because the value of a medical assistant degree would "simply be the estimated enhanced income that she could earn and the enhanced self-esteem that a person attempting to become a medical professional gains by getting this degree."

"Damages in breach of contract cases are nothing more than payment in money for actual losses caused by the breach of contract." *Custom Built Homes v. G.S. Hinsen Co.*, No. 01A01-9511-CV-00513, 1998 WL 960287, at *4 (Tenn. Ct. App. Feb. 6, 1998). Accordingly, "[a]n injured party is only entitled to be put in *the same position* he would have been in had the contract been performed, and he should not profit by the defendant's breach." *Hennessee v. Wood Grp. Enterprises, Inc.*, 816 S.W.2d 35, 37 (Tenn. Ct. App. 1991) (citations omitted) (emphasis added). "The party seeking damages has the burden of proving them." *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999) (citing *Inman*, 634 S.W.2d at 272). "Without proof of damages, there can be no award of damages." *BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 229 (Tenn. Ct. App. 2006) (quoting *Inman v. Union Planters Nat'l Bank*, 634 S.W.2d 270, 272 (Tenn. Ct. App. 1982). However, parties are not entitled to recover *uncertain, contingent, or speculative* damages. *See Moore Constr. Co. v. Clarksville Dep't of Elec.*, 707 S.W.2d 1, 15 (Tenn. Ct. App. 1985); *Maple Manor Hotel, Inc. v. Metro. Gov't of Nashville and Davidson Cnty.*, 543 S.W.2d 593, 599 (Tenn. Ct. App. 1975).

Although damages do not need to be proven with mathematical certainty, "[d]amages will be considered *uncertain or speculative when their existence is uncertain*, or when the proof is insufficient to enable a trier of fact to make a fair and reasonable assessment of damages." *Custom Build Homes*, 1998 WL 960287, at *4 (citing *Wilson v.*

*Farmers Chem. Ass'n, Inc.*, 444 S.W.2d 185, 189 (Tenn. 1969)) (internal citations omitted) (emphasis added).

Plaintiff's alleged damages are based upon the theory that, if National College had not terminated her enrollment in Term 107, she would have completed Term 107 and received a passing grade in each course; then, Plaintiff would have enrolled in all remaining courses required to obtain a medical assistant degree and received a passing grade in each course; and, as a result of the successful completion of all her courses, she would have obtained a medical assistant degree; and with said degree, Plaintiff would have obtained employment as a medical assistant that would provide her enhanced income. Nevertheless, it remains uncertain whether Plaintiff would have *obtained employment* as a medical assistant but for being removed from Term 107. In fact, it remains uncertain whether she would have *obtained a medical assistant degree*. This is due, in part, to the fact that she returned to school but failed a course during Term 113.

Moreover, as a matter of contract, Plaintiff admitted that she had been given *no assurance or promise by National College of finding work in that field* and she was *not guaranteed employment* as a medical assistant even if she had obtained a degree in her chosen course of study at National College. Further, although Plaintiff asserted that there is an "intrinsic value to the medical assist degree that National College denied her, that transcends the actual additional income that it would have brought her," Plaintiff presented *no evidence* to support this assertion.

The foregoing considered, we agree with the trial court that Plaintiff's claimed damages of the "expected value of her chosen course of studies" are uncertain and impermissibly speculative as a matter of law. *See Canady*, 811 S.W.2d at 907.

ii. Damages Caused by the Breach

The trial court additionally found that Plaintiff could not prove that she sustained damages as a result of National College's alleged breach.

It is undisputed that *after* Plaintiff's disenrollment in Term 107, she returned to classes at National College for two additional terms, and then *voluntarily withdrew* after receiving a failing grade. Significantly, the record reveals that no action or inaction on the part of National College is preventing Plaintiff from completing "her chosen course of studies" at National College and reaching her goal of obtaining a medical assistant degree.

We acknowledge that Plaintiff alleges "she was either unable to or National College made it too hard for her to" remain in the negative atmosphere caused by National College's alleged breach; this unsupported allegation, however, is not evidence.

Accordingly, Plaintiff failed to present any evidence to rebut that her claimed damages were caused by her *voluntary withdrawal* from National College.

Considering the evidence in the light most favorable to Plaintiff and resolving all inferences in her favor as summary judgment requires, *Martin*, 271 S.W.3d at 84, we have determined the undisputed facts and conclusions permit a reasonable person to reach only one conclusion, the alleged breach, that being the cancellation of her enrollment in Term 107, is not the cause of the damages claimed by Plaintiff.

## B. BREACH

The trial court further found that National College negated a second essential element of Plaintiff's breach of contract claim, that being that National College breached the contract. However, National College's motion for summary judgment did not raise any issue regarding the alleged breach, other than to provide that National College did not concede that there was a breach, but assuming there was a breach, Plaintiff could not prove the element of damages. Since this issue was not raised, Plaintiff's obligation to respond to the non-issue was never triggered. *See Elliot v. Life of the S. Ins. Co.*, 296 S.W.3d 64, 71 (Tenn. Ct. App. 2008). Moreover, the issue was not before the trial court; accordingly, the court should not have granted National College summary judgment on the issue of breach, as distinguished from speculative damages. Nevertheless, since we have affirmed the summary dismissal of the contract claim on the basis that the claimed damages were speculative, this ruling constitutes harmless error.

For the foregoing reasons, we affirm the summary dismissal of Plaintiff's breach of contract claim. We will now turn to the dismissal of Plaintiffs claims for TCPA and IIED.

## III. TENN. R. CIV. P. 12.02(6) – FAILURE TO STATE A CLAIM

Plaintiff's claims against Defendants under TCPA and IIED were dismissed for failure to state a claim upon which relief can be granted, pursuant to Tennessee Rule of Civil Procedure 12.02(6).

The standards by which Tennessee courts are to assess a Rule 12.02(6) motion to dismiss are well established. As our Supreme Court stated in *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011), "[a] Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." "The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone." *Id.* (citations omitted). By filing a motion to dismiss, the defendant "admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action." *Id.* (citations omitted).

- 11 -

When a complaint is challenged by a Rule 12.02(6) motion, the complaint should not be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief. *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999) (citing *Riggs v. Burson*, 941 S.W.2d 44, 47 (Tenn. 1997)). Making such a determination is a question of law. Our review of a trial court's determinations on issues of law is de novo, with no presumption of correctness. *Id.* (citing *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn.1997)).

## A. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The elements of a claim for intentional infliction of emotional distress are (1) the conduct about which the plaintiff complains must be intentional or reckless, (2) the conduct must be so outrageous that it is not tolerated by civilized society, and (3) the conduct about which the plaintiff complains must result in serious mental injury. *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012); *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997).

Our Supreme Court has held that it is "not an easy burden to meet the essential elements of outrageous conduct and 'has adopted and applied the high threshold standard described in the Restatement (Second) of Torts.'" *Lane v. Becker*, 334 S.W.3d 756, 762-63 (Tenn. Ct. App. 2010) (quoting *Bain*, 936 S.W.2d at 622). The standard described in Restatement (Second) of Torts states in pertinent part:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Bain*, 936 S.W.2d at 622 (quoting Restatement (Second) of Torts § 46 comment d (1965)).

Moreover, outrageous conduct does not include "mere insults, indignities, threats, annoyances, petty oppression or other trivialities." *Levy v. Franks*, 159 S.W.3d 66, 83 (Tenn. Ct. App. 2004); *Arnett v. Domino's Pizza I, LLC*, 124 S.W.3d 529, 539 (Tenn. Ct.

App. 2003) (quoting *Bain*, 936 S.W.2d at 622). A plaintiff seeking damages for intentional infliction of emotional distress must meet an "exacting standard." *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999). "Recovery for intentional infliction of emotional distress is limited to mental injury which is so severe that no reasonable person would be expected to endure it." *Arnett*, 124 S.W.3d at 540.9

It is the trial court's determination, in the first instance, as to whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. *Lane*, 334 S.W.3d 756, 763 (Tenn. Ct. App. 2010) (citing Restatement (Second) of Torts § 46, cmt. h (1965)). "Thus, the trial court may reasonably dismiss this legal theory as a matter of law." *Id*. However, where reasonable persons may differ, it is for the jury to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability. *Id*.

Plaintiff relies upon the following allegations in the Complaint to support her claim for IIED.

a) A college director arbitrarily (i.e., without being compelled by regulation or protocol) terminating the important, valuable, and irreplaceable vocational education of an industrious 59-year-old woman because she had not provided the college with her GED transcript;
b) when the woman had provided her GED diploma card;
c) when it was really the college's responsibility to provide the GED transcript;
d) when the college had not given the woman sufficient warning that she must provide the GED transcript or be terminated; and
e) the director stubbornly refused to retract the arbitrary termination after the woman provided the GED transcript on the same day she was notified of her termination.

Plaintiff alleges the actions of Mr. Denney caused her "continuing great emotional pain and mental distress," and that she "felt that she could no longer pursue her educational goals because she could not continue at National College and she could not start all over somewhere else at her age." Plaintiff further alleges that Mr. Denney's outrageous conduct was done in the scope of his employment with National College, and, therefore, National College is vicariously liable for Mr. Denney's actions.

On this issue, we find this court's decision in *Runions v. Tennessee State University*, No. M2008-01574-COA-R3-CV, 2009 WL 1939816 (Tenn. Ct. App. July 6, 2009) instructive. In *Runions*, a woman attending a nursing program at Tennessee State University received a grade of D in one of her courses and was dropped from the program. *Id*. at *1. She appealed to the provost of the university, who led her to believe

- 13 -

that she had been, or would be, reinstated. *Id*. She learned that this was not so when she returned to class and the instructor physically escorted her from the classroom. *Id*. She brought suit against the university and four of its employees asserting a claim for intentional infliction of emotional distress. *Id*. The trial court dismissed her suit for failure to state a claim upon which relief can be granted pursuant to Tenn. R. Civ. P. 12.02(6). *Id*.

> In the appeal that followed, we reasoned:

> Ms. Runions is understandably unhappy that she was expelled from TSU's nursing program and that her goal of earning a nursing degree has been frustrated. However, neither the administrators' decision to expel her from the program because of her grades nor the instructor's action in physically removing her from the classroom meets the exacting standard for recovery on a claim of outrageous conduct or intentional infliction of emotional distress.

*Runions*, 2009 WL 1939816, at *6.

We find Plaintiff's claim for IIED comparable to that of the student in *Runions*. Plaintiff is understandably unhappy that her enrollment in Term 107 was cancelled, and, thus, briefly delayed her goal of completing her degree at National College. However, Mr. Denney's decision to cancel Plaintiff's enrollment in a single term because her student file was not in compliance with the THEC, and his decision to affirm the cancellation after Plaintiff provided the GED certificate because the student file was not in compliance *prior to* the start of the term, does not rise to the sufficiently outrageous standard required for recovery under IIED, for reasonable minds could not differ that his conduct was "'atrocious,' 'utterly intolerable,' and 'beyond all bounds of decency.'" *Id.* at *6 (quoting *Goldfarb v. Baker*, 547 S.W.2d 568, 569 (Tenn. 1977)).

We, therefore, affirm the dismissal of Plaintiff's claim for IIED.

### B. TENNESSEE CONSUMER PROTECTION ACT

Plaintiff's claim for violation of the TCPA was dismissed upon the finding that the allegations in the Complaint were insufficient to state a claim that National College had engaged in a deceptive or unfair trade practice.[7]

---

[7]The trial court also found that National College is an educational institution whose activities are not subject to the TCPA and concluded that the Complaint failed to state a claim for that additional reason. Because we affirm the dismissal of Plaintiff's TCPA claim upon the finding that the allegations in the Complaint were insufficient to state a claim that National College engaged in deceptive or unfair trade practice, it is not necessary for us to examine the propriety of the trial court's other finding.

- 14 -

The TCPA prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce . . . ." Tenn. Code Ann. § 47-18-104(a). To recover damages under the TCPA, a plaintiff must prove: "(1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity or thing of value wherever situated[.]" *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2003) (citing Tenn. Code Ann. § 47-18-109(a)(1)). The key terms "unfair" and "deceptive" are not defined by the TCPA. Therefore, "the standards to be used in determining whether a representation is 'unfair' or 'deceptive' under the TCPA are legal matters to be decided by the courts." *Id.* at 116. "However, whether a specific representation in a particular case is 'unfair' or 'deceptive' is a question of fact." *Id.* (citing *Davidson v. General Motors Corp.*, 786 N.E.2d 845, 851 (Mass. App. Ct. 2003)). This court reviews questions of fact de novo with a presumption of correctness. Tenn. R. App. P. 13(d); *Rawlings*, 78 S.W.3d at 296.

Plaintiff alleges she is entitled to recovery under the TCPA because Defendants' actions in arbitrarily terminating Plaintiff's enrollment in Term 107 were "'unfair or deceptive acts or practices affecting the conduct of any trade or commerce' within the meaning of the [TCPA] (codified at Tenn. Code Ann. § 47-18-101 *et seq*.) and violated Tenn. Code Ann. § 47-18-104."

Although the Complaint is replete with particular and specific facts regarding the actions of Defendants in the cancellation of Plaintiff's enrollment, it is lacking in the requisite facts regarding the alleged actions of Defendants that pertain to a violation of the TCPA. Specifically, Plaintiff fails to plead with the required particularity proof substantiating an intention on the part of Defendants to *deceive her or the public*. To the contrary, Plaintiff acknowledges within the Complaint that Defendants informed her that the termination of her enrollment was due to her student file not containing an official copy of her GED certificate as required by the THEC. Additionally, the facts, as alleged by Plaintiff, are insufficient to demonstrate that Defendants were engaged in trade or commerce as defined under the TCPA. *Id.* (citing *Lord v. Meharry Med. Coll. School of Dentistry*, No. M2004-00264-COA-R3-CV, 2005 WL 1950119, at *2 (Tenn. Ct. App. Aug. 12, 2005)).

After separating the factual allegations concerning Defendants from the conclusory allegations, we find that Plaintiff's vague and conclusory allegations are insufficient to sustain a claim under the TCPA. *See McMillin v. Lincoln Mem'l Univ.*, No. E2010-01190-COA-R3-CV, 2011 WL 1662544, at *8 (Tenn. Ct. App. May 3, 2011).

We, therefore, affirm the trial court's dismissal of Plaintiff's TCPA claim against Defendants.

IV. MOTION TO AMEND COMPLAINT

- 15 -

Plaintiff's proposed Third Amended Complaint sought to incorporate recovery for mental damages in her breach of contract claim, due to the dismissal of her IIED claim.

The grant or denial of a motion to amend a pleading is within the sound discretion of the trial court. *See* Tenn. R. Civ. Pro. 15.01; *Cumulus Broadcasting, Inc. v. Shim*, 226 S.W.3d 366, 375 (Tenn. 2007). Although permission to amend should be liberally granted, the decision "will not be reversed unless abuse of discretion has been shown." *Cumulus Broadcasting, Inc.*, 226 S.W.3d at 366. Factors the trial court should consider when deciding whether to allow amendments include "[u]ndue delay in filing; lack of notice to the opposing party; bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Id.* "A trial court abuses its discretion only when it applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citations omitted).

The trial court denied Plaintiff's motion to amend finding that her requested amendment was futile, untimely, and prejudicial to Defendants. The trial court found that the general rule which provides that there can be no recovery of damages for mental anguish occasioned by breach of contract to be controlling in the case.

In Tennessee, the general rule is that there can be no recovery of damages for mental anguish occasioned by a breach of contract. *See, e.g.*, *Johnson v. Women's Hospital*, 527 S.W.2d 133, 141 (Tenn. Ct. App. 1975) ("The general rule is that punitive damages are not recoverable in a contract action and neither are damages for mental anguish[.]"). The foregoing considered, we find the trial court did not abuse its discretion in denying Plaintiff's motion to amend her Second Amended Complaint.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Mary Kindred.

_____
FRANK G. CLEMENT, JR., JUDGE